**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff** | |
| **vs.** | **Crim. No. 19-155 (DRD)** |
| **HECTOR SANCHEZ-MORALES** | |
| Defendant | |

**REPLY TO GOVERNMENT'S OPPOSITION TO REQUEST FOR**
**INFORMATION**

**TO THE HONORABLE COURT:**

Comes now defendant, through the undersigned counsel, and respectfully

states and prays:

1.      On April 2, 2019 the government filed its opposition to defendant's

request for information as to the name of the individual identified as "A.G." in the

indictment. Instead of providing the court valid reasons to deny the defense such

vital information the government's opposition fails to properly justify its refusal.

Introduction.

2.      Rule 16(a) of the Federal Rules of Criminal Procedure provides a

defendant access to items that are material to the preparation of his defense. In the

instant case the materiality of the purported victim's true name for the preparation

1

of Mr. Sanchez' defense cannot be questioned. Yet, the government has refused to provide the information requested despite its manifest necessity for the preparation of a defense.

3.      The government's attempts to limit discovery and refuse to identify "A.G." must comply with Rule 16 (d) of the Federal Rules of Criminal Procedure. Rule 16 (d) allows the court to issue protective orders limiting or denying discovery for "good cause." To establish "good cause" the party seeking relief must make a "particularized, specific showing." *U.S. v. Bulger*, 283 F.R.D. 46, 52 (D.Mass. 2012). As will be shown below, the government has failed to make the showing required, therefore, it is not entitled to withhold "A.G.'s" true name from the defense.[1]  Defendant is also entitled to disclosure under the Constitution of the United States and Supreme Court case law.

<u>The Government's Own Documents Support Disclosure.</u>

5.      The government's efforts to deny defendant access to "A.G.'s" true identity are thwarted by its own documents which illustrate the critical importance of the data requested by defendant.

6.      According to the prosecution the Federal Bureau of Investigation's ("FBI's") Report of Investigation memorializing "A.G.'s" statements should not be

---

[1] Defendant reiterates that he would agree to an order limiting dissemination of "A.G.'s" identity.

taken into consideration by the Court as it records defendant's own use of the name "Maria" to address "A.G." Thus, to avoid the implications arising from its memorialization of "A.G.'s" narration of her interaction with defendant using the name "Maria," the prosecution portrays it as a statement from Mr. Sánchez when in reality only "A.G." is its actual source.

7.      The government's argument would be understandable if the ROI memorialized a declaration from Mr. Sánchez. However, the cited ROI seeks to memorialize "A.G.'s" statements, not the defendant's. According to the FBI "A.G." told the interviewing agents that defendant referred to her as "Maria." It is unlikely that defendant would have referred to "A.G." as "Maria" unless she had identified herself by that name. More importantly, the ROI does not memorialize that "A.G." corrected defendant's use of that name or that she provided defendant with her actual name. More tellingly, no follow up questioning appears in the ROI clarifying defendant's use of that name.

8.      In essence the government's opposition skirts the critical issue, whether "A.G." represented herself to be "Maria." Notably, the opposition goes to great lengths to avoid admitting or denying whether "A.G." identified herself at "Maria."  "A.G.'s" use of the name in connection with her efforts to illegally enter

the United States provides grounds for impeachment.[2] Her actual name becomes

impeachment material and should be turned over to the defense under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), and its progeny.

9.      In *Youngblood v. West Virginia*, 547 U.S. 867 869 (2006), the Supreme

Court explained that "[a] Brady violation occurs when the government fails to

disclose evidence materially favorable to the accused. See 373 U.S., at 87, 83 S. Ct.

1194. This Court has held that the Brady duty extends to impeachment evidence

as well as exculpatory evidence." It is undeniable that "A.G.'s" credibility is at the

heart of the instant case.

10.      Once defendant has alerted the government of "A.G.'s" use of a

different name or alias and requested specific discovery the matter cannot be

disposed of by merely referring to defendant's right of cross-examination. The

prosecution has an obligation to enquire and turn over such evidence to the

defense if it exists. Indeed, the government's obligation extends not only to her

actual name but to her use of other names or aliases as they would also be

impeachment material subject to *Brady*. As the Supreme Court noted in *U.S. v.*

*Bagley*, 473 U.S. 667, 683 (1985), "[w]e agree that the prosecutor's failure to respond

---

[2]  The government faults the defense for not citing authority in support of its argument that it is common for illegal immigrants of use false names. No such citation is necessary. The Court should be mindful that it is routine government procedure to fingerprint precisely because of the need to ascertain their true identities, verify their criminal records and determine their immigration status.

fully to a Brady request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption."

11.     Similarly, if as the limited discovery provided suggests, "A.G." lived in the United States previously, a fact studiously avoided in the government's opposition, information as to the legality of her residential status is also discoverable under *Brady.* Her actual name becomes all the more relevant for the preparation of Mr. Sánchez' defense. Such information is within the government's possession and/or control and is easily retrievable. Additional materials regarding her employment status while in the United States and her payment of compliance with federal, state and local taxes are also relevant as they would indicate mendacity, fraud and/or moral turpitude.

12.     Defendant is entitled to pursue investigatory leads to prepare his defense. The starting point for his investigations is "A.G.'s" actual name. By refusing to provide "A.G.'s" identifying data the government seeks to frustrate defendant's efforts to prepare his defense.

<u>Defendant Has a Constitutional Right to Prepare a Defense.</u>

13.    Defendant's constitutional right to present a defense is at odds with the government's interpretation of *Brady* and its progeny as well as the prosecution's reading of the case law cited in defendant's motion. For example, the government attempts to limit the holding in *Davis v. Alaska*, 415 U.S. 308 (1974), as merely a recognition of a defendant's right to cross-examine the government's witnesses. However, *Davis* is not so limited and cannot be viewed in isolation.

14.    *Davis* does not discuss defendant's right to discovery. It presumes government compliance with its obligation under *Brady* to turn over to the defense the impeachment evidence within its possession or control. It is unclear from the opinion whether the juvenile's record was disclosed by the government or unearthed by the defendant. Regardless of how the information got into defendant's hands the Court in *Davis* upheld his constitutional right to go into its contents on cross-examination despite a policy protecting the privacy of the witness. *Davis* at 319. See, also, *Washington v. Texas*, 388 U.S. 14 (1967). Both cases support the proposition that privacy interests, even those protected by statute, must yield to a defendant's constitutional right to present his defense.

15.    The government's interpretation of *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), also misperceives its holding. In *Ritchie*, the Supreme Court labeled the government's obligation to turn over evidence favorable to the defense and

material to guilt or punishment as "well settled." *Ritchie*, p. 57.  It is for that reason that the case is remanded. The trial court is directed to review the material to determine if information in Pennsylvania's Criminal and Youth Services office was discoverable under *Brady*. Like *Davis*, *Ritchie* illustrates that a defendant's constitutional rights override witness confidentiality and privacy concerns.

16.     The prosecution also attempts to avoid providing "A.G.'s" true name by recasting the defense's request as a demand for its witness list.[3] The prosecution's attempt fails. Even if "A.G." were not to testify her identity would still be material to the preparation of a defense. Ordinarily, the information would be provided in the indictment itself. The Court of Appeals has explained that "[a] vital function of an indictment is to provide 'such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation …' This principle is derived directly from the Sixth Amendment's guarantee of the right of an accused 'to be informed of the nature and cause of the accusation * * * ' and is basic to the proper functioning of our adversary system of justice. Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an

---

[3]  In another effort to rescript the issues the government accuses the defense of attempting to "publicly malign the victim … and accuse her of committing a crime." D.E. 30, ¶2. However, "A.G.'s" illegal entry or reentry, a federal crime, is at the heart of Count Two of the indictment and thus, was brought forward by the government, not the defense.

accused is at a material disadvantage in meeting the charge against him." *U.S. v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970). In *Tomasetta* the Court of Appeals affirmed the dismissal of an indictment in circumstances where the identity of the purported victim was deemed critical.

17.    According to the Supreme Court where guilt crucially depends on a specific identification of fact the indictment may not be limited to the statutory language. *Russell v. U.S.*, 374 U.S. 749 (1962). "A.G.'s" identity and her credibility are crucial for the determination of guilt.

18.    In the case at bar "A.G." is not just any witness. She is the purported victim whose particular characteristics are at the heart of the charges against the defendant. Even in cases involving informants, whose identity is usually protected, disclosure has been held proper when it is relevant and helpful to the defense or is essential to a fair determination of a cause. See, *Roviaro v. U.S.*, 353 U.S. 53, 60 (1957).

<u>Conclusion.</u>

Other than vague generalities, the government has not come forward with any concrete evidence to establish that "A.G.'s" safety would be compromised by the revelation of her true name to the defense. Defendant's history does not suggest any areas of concern. Moreover, he has lived all his life in Añasco, far away from the San Juan metropolitan area where "A.G." presumably is current housed.

8

"Good cause" to preclude disclosure of "A.G.s" name to the defense has not been shown. The government has offered only sheer innuendo failing to identify any actual risk of witness intimidation or tampering. The government has also failed to show why the only option that protects "A.G.'s" safety and privacy is to completely deprive defendant of her name. On the other hand, the critical need for an order requiring the government to provide defendant with "A.G.'s" true name has been explained above.

**WHEREFORE**, it is respectfully requested that this Honorable Court direct the government to provide to the defense the name of the person identified as "A.G." in the indictment as well as any additional *Brady* material referred to above and such further relief as the court may consider just and proper.

I CERTIFY that this motion has been filed using the court's CM/ECF system which will automatically give notice of the filing to all parties of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 23rd day of April 2019.

ERIC A. VOS, Esq.
Federal Public Defender

*S/Victor P. Miranda-Corrada*
Víctor P. Miranda-Corrada, Esq.
Assistant Federal Public Defender
USDC-PR  201205
241 F.D. Roosevelt Avenue
San Juan, PR  00918-2305
Phone No. (787) 281-2441
Victor_Miranda@fd.org